Argued August 24, reversed October 12, 1972

# MICHELET, SOWERS, JOHNSON & COMPANY, Petitioner, v. MORGAN, Respondent.

501 P2d 984

*Clifford N. Carlsen, Jr.*, Portland, argued the cause for petitioner. With him on the brief were Warren C. Deras and Miller, Anderson, Nash, Yerke & Wiener, Portland.

*Al J. Laue*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

Petitioner-employer seeks judicial review of the findings[1] and order (ORS 183.470) of the State Em-

---

[1]
"From the evidence adduced at the hearing, the referee makes the following

"FINDINGS OF FACT: (1) The plaintiff, Michelet, Sowers, Johnson & Company, is an Oregon corporation and has been an employer subject to the Employment Division Law since January 1, 1965. (2) Its business is that of free-lance court reporter, reporting court proceedings and taking depositions. (3) At the time of the hearing, there were six reporter employes working for the plaintiff and a like number during 1970. (4) The reporters make verbatim notes of the testimony given during a court session, as well as when taking a deposition. (5) The reporter subsequently dictates from his

ployment Division which held him liable as an employer to make contributions to the Employment Division. The challenged deficiency assessment relates to unemployment taxes claimed by the Division to be due with respect to payments made by petitioner to certain

notes onto a recording tape. (6) The typist or transcriber listed on the employer's quarterly report of employes' wages and weeks of work attached to and made a part of the Notice of Deficiency Assessment (Exhibit No. 2) would pick up the tape or tapes from plaintiff's office and after taking it to their home, place it on a Stenorette tape player and type a verbatim transcript from the reporter's dictation. (7) The typist or transcriber is paid on a per page of transcript basis. (8) When the transcript is completed, the individual then returns the tape, together with the unbound pages of transcript, to plaintiff's office. (9) Although it may vary with the person, some individuals submit a bill for their pages of transcript to the plaintiff on the 15th and at the end of each month. (10) This is for all work done whether a completed transcript or not, up to the date of the billing. (11) The typists or transcribers are paid by plaintiff for completed pages of transcript, and not by the individual reporter for whom the work was done (there was one exception to this when a witness for plaintiff was paid for one transcript by the reporter and not the plaintiff, although the witness could not recall the reason why or any details surrounding the circumstances). (12) During each of the calendar quarters of time involved herein, plaintiff utilized the services of one or more typists or transcribers and paid them for such services in excess of $225.00 each quarter. (13) Each of the typists and transcribers furnish their own equipment such as typewriter, Stenorette tape player, typewriter ribbons and incidental supplies, except the paper on which the transcript is prepared (this is furnished by the plaintiff or some other party for whom the individual is doing the work), desk, chair, and filing cabinet. (14) The typists and transcribers are at liberty to determine their own hours of work and they are only responsible to plaintiff for the completed transcript. (15) Those that were called as a witness by the plaintiff all have a certain area of their home set aside in which they do the work. (16) None of them display any sign or other indication of their conducting a business there however. (17) None of them have a business license or permit or assumed business name. (18) Nor do they advertise their services, have a business bank account or are listed in the 'yellow pages' of the local telephone directory. (19)

typists and transcribers. Petitioner is in the business of free-lance court reporting, deposition and related work.

Petitioner contends that the typists and transcribers involved were not employes because their service came within the statutory exemption of ORS 657.040(1) and (2), which reads in pertinent part:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the administrator that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2)(a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service * * * "

They do not have business cards or belong to any professional society or organizations. (20) With the exception of one of them, the three witnesses called by plaintiff do not and did not, during the period of time in issue (beginning with the first calendar quarter of 1968 and ending with the fourth calendar quarter of 1970), hire any employes. (21) The one exception to this was when a transcriber was about to go into a hospital for medical attention and she turned over two jobs to her sister whom she paid for completing them. (22) The typists and transcribers are free to work for whomever else they please and several of them do transcribe for more than one reporter, not only within the plaintiff's firm but also for other reporters, as well as taking minutes of directors' meetings and typing students' term papers. (23) One of the transcribers is also an apartment house manager with an apartment furnished her on the premises (a portion of which is dedicated as her typing area). (24) None of the typists or transcribers could sell their 'business' for more than the value of their equipment. (25) None of the typists or transcribers, insofar as shown in the record, are recognized by the Department of Revenue as an employer."

Specifically, petitioner argues that the referee did not apply the correct standard in deciding that the typists and transcribers there involved did not fit within the exemption of ORS 657.040(1) and (2) and further argues the referee subsequently failed to include or consider certain relevant evidence in its findings of fact.

The question of whether or not a person is an employe within the meaning of ORS 657.040 is one of law. As stated in *Baker v. Cameron,* 240 Or 354, 359-60, 401 P2d 691 (1965):

> "There is doubt whether the distinction between questions of fact and questions of law can ever accurately be drawn upon a conceptual or analytical basis. See 4 Davis, Administrative Law Treatise, ch 30 (1958). However, this court has a consistent line of precedents holding that if the facts are not disputed, the question of whether one is an 'employee' or the contractor of another is a question of law. *Journal Pub. Co. v. State U. C. Com.,* supra, is such a precedent interpreting the Unemployment Compensation Act. *Rahoutis v. Unemployment Commission,* 171 Or 93, 112, 136 P2d 426 (1943), is in accord. *Wallowa Valley Stages v. Oregonian,* 235 Or 594, 600, 386 P2d 430 (1963), is a common-law decision. There, we stated: 'Whether or not a given person is the servant or the contractor of another is ordinarily a question of law, where the facts are clear.'
>
> "We hold that the Commissioner's decision is the determination of a question of law and, therefore, independent judgment can be exercised upon judicial review. * * *"

Generally, in appeals from administrative hearings where, after determining the proper legal standard, it becomes clear to the reviewing court that the referee has failed to make a specific finding of fact

regarding relevant evidence, the proper remedy is to remand and order the referee to make such findings of fact.[2]

■ However, in cases where the evidence not included in the findings of fact is uncontroverted, then the remand becomes unnecessary and the reviewing court has the power to consider such evidence in its opinion.[3]

Applying these principles to the case at bar we conclude the typists and transcribers are not employes within the meaning of ORS 657.040(1) and (2)(a).

It is clear from the findings of the referee[4] that the typists and transcribers are free from the control or direction of petitioner as required by ORS 657.040(1). (See particularly findings number 14 and 22, infra, n 1.)

■ The referee's ultimate finding that the mere economic control which exists where a person has the right to fire another at will is sufficient to create an employer-employe relationship is an incorrect interpretation of ORS 657.040(1). *See Kuhlman v. Morgan,* 9 Or App 184, 186, 496 P2d 246 (1972), decided after the referee's decision in this case, which attached little significance to the fact that "[e]ither party was free to terminate the relationship * * *" in its holding that there was no employer-employe relationship within the meaning of ORS 657.040 (1).

---

[2] *See* Wright v. Insurance Commissioner, 252 Or 283, 292-93, 449 P2d 419 (1969).

[3] Bernard v. Bd. of Dental Examiners, 2 Or App 22, 30-35, 465 P2d 917 (1970). In accord is Kuhlman v. Morgan, 9 Or App 184, 187, 496 P2d 246 (1972), where the court also considered uncontradicted evidence not included in the referee's findings of fact, and decided the case rather than remanding it.

3. Respondent urges that:

"⁕ ⁕ ⁕ A condition of economic dependence existed between the typists and the petitioner. This dependence eliminates the independently established character of the petitioner's relationship with the typist. ⁕ ⁕ ⁕"

It relies on *Journal Pub. Co. v. State U. C. Com.*, 175 Or 627, 155 P2d 570 (1945). That case, however, dealt with a newspaper carrier who by contract was precluded from rendering services to any other newspaper. In the case at bar the exact opposite was true. The typists and transcribers not only had the right to render identical services to others but in fact regularly did so. Nor were they here required to render any particular service to petitioner and were free to refuse any work at any time, whereas the carrier in *Journal* was required to perform all of the delivery work on the route in question.

The referee's opinion that the typists and transcribers were not engaged in an independently established business is also based upon a misinterpretation of the applicable statute, ORS 657.040(2)(a). The guidelines for this latter condition were set forth in *Baker v. Cameron,* 240 Or 354, 365-66, 401 P2d 691 (1965), as quoted by this court in *Kuhlman v. Morgan,* supra. *See also, Culp v. Peet,* 3 Or App 406, 409, 410, 474 P2d 13 (1970).

Applying those decisions here, we conclude that the typists and transcribers were customarily engaged in their own independent businesses.

Each of the typists and transcribers furnishes her own place of work. Each also supplies her own equipment, such as typewriter, Stenorette tape player, typewriter ribbons and incidental supplies. Only the

paper on which the transcript is prepared is furnished by whatever party the typist at the moment is working for. Typists also provide their own desks, chairs, filing cabinets, telephones and automobiles. They each have certain areas of their homes set aside in which they do the work. Typists engaged in this type of work do not generally deal with the general public but almost exclusively with some 35 court reporters, most of whom know almost all of the typists. Conventional advertising thus would be unnecessary and ineffective for them, and they do not undertake such advertising. Indeed, as is common in the trade, petitioner itself for the same reason is not listed in the "yellow pages."

The typists and transcribers are free to work for whomever else besides petitioner they please, and all of them do transcribe for more than one reporter, not only within the petitioner's firm but also for competing firms and individual reporters, as well as taking minutes of directors' meetings and typing students' term papers entirely unrelated to petitioner's business. One typist gave the names of six reporters other than petitioner for whom she performed typing services at the same time as she typed for petitioner. The typists and transcribers are treated as self-employed for income tax purposes, and they take or are entitled to take as business deductions portions of their rent or house depreciation, depreciation on equipment, telephone expenses and automobile expenses.

That the typists and transcribers did not regularly employ other individuals, utilize a separate telephone service, have business cards or engage in public advertising are not controlling in light of the other more significant facts described above. These adequately indicate each typist and transcriber was

engaged in " '* * * an enterprise created and existing separate and apart from the relationship with the particular employer, an enterprise that will survive the termination of that relationship. * * *' " *Baker v. Cameron,* supra, 240 Or at 365.

For the reasons stated, the referee's order affirming the deficiency assessment should be reversed.